UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------X

LEVIAH EHRLICH,                                  :   CV:

                         Plaintiff,        :

      -against-                              :   COMPLAINT

                                                          :

NYU LANGONE HOSPITALS, AUSTIN BENDER,     :

DEREK FORTE, DENISE DANIEL, and VANITA       :

MORRIS (Sued in their Individual Capacities Pursuant   :   JURY TRIAL DEMANDED

to NYEL §§ 290 *et seq*.),                               :

                                                          :

                         Defendants.      :

-------------------------------------------------X

      Plaintiff, LEVIAH EHRLICH, by her attorneys SCOTT MICHAEL MISHKIN

P.C., complaining of the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

      Plaintiff brings this instant action pursuant to (1) Title VII of the Civil rights Act

of 1964, 42 U.S.C. § 2000e *et seq*. (hereinafter referred to as "Title VII"), for defendant

NYU Langone Hospitals' ("Hospitals" or "defendant") religious discrimination and

hostile work environment against plaintiff, as well as for defendant's retaliation against

plaintiff for engaging in protected activity; (2) pursuant to New York Executive Law §§

290 *et seq*., (hereinafter referred to as "NYEL"), for defendant Hospitals' religious

discrimination, hostile work environment, and retaliation for plaintiff's participation in

protected activity; (3) pursuant to NYEL as for and against defendant Austin Bender

("Bender"), Senior Director Employee and Labor Relations, Derek Forte ("Forte"),

Employee and Labor Relations Director, Denise Daniel ("Daniel"), Human Resources,

and Vanita Morris ("Morris"), supervisor ("individual defendants") for their respective

participation in, aiding, controlling, abetting, inciting, compelling, and/or coercing of

defendant Hospitals' religious discrimination and for retaliation against plaintiff for engaging in protected activity and creation of a hostile work environment; (4) and against defendant Hospitals pursuant to New York Labor Law (NYLL) § 201-d for plaintiff's engagement in recreational activities.

## JURISDICTION

FIRST:        The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331 as this matter is raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

SECOND:        At the This Court also has supplemental jurisdiction over plaintiffs' pendant State claims brought pursuant to NYEL and NYLL§ 201-d as pursuant to 28 U.S.C. §1367(a) they arise from the same events and controversy.

## VENUE

THIRD:        The unlawful practices alleged below were committed within the County of Nassau, State of New York.

FOURTH:        At the time of the unlawful practices, plaintiff was, and still is, a resident of Nassau County in the State of New York.

FIFTH:        The causes of action arose in the State of New York while plaintiff was employed by Hospitals, which conducts substantial business in the County of Nassau in the State of New York.

SIXTH:        Therefore, this Court is the proper venue under 28 U.S.C. §1391.

## PARTIES

SEVENTH:        At all times relevant to this action, plaintiff was and is Jewish.

EIGHTH:　　At all times relevant to this action, plaintiff was an "employee" of defendants as defined by Title VII.

NINTH:　　At all times relevant to this action, Hospitals was an "employer" as defined by Title VII.

TENTH:　　At all times relevant to this action, plaintiff was an individual employed by Hospitals.

ELEVENTH:　Plaintiff was employed at Hospitals Mineola location at 259 1st St, Mineola, New York 11501.

TWELFTH:　At all times relevant to this action, Bender had the authority to assist in the hiring, firing, and disciplining of employees at defendant.

THIRTEENTH:　　Bender had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his willful discriminatory and animus retaliatory treatment against plaintiff.

FOURTEENTH:　　Bender aided, abetted, incited, controlled, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL.

FIFTEENTH:　Bender actually participated in the conduct giving rise to plaintiff's discrimination and retaliation claims and is thereby individually liable for his willful, wanton and malicious discriminatory and retaliatory treatment against plaintiff pursuant to NYEL.

SIXTEENTH:　At all times relevant to this action, Forte had the authority to assist in the hiring, firing, and disciplining of employees at defendant.

SEVENTEENTH:　　Forte had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his willful discriminatory and animus retaliatory treatment against plaintiff.

EIGHTEENTH: Forte aided, abetted, incited, controlled, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL.

NINETEENTH: Forte actually participated in the conduct giving rise to plaintiff's discrimination and retaliation claims and is thereby individually liable for his willful, wanton and malicious discriminatory and retaliatory treatment against plaintiff pursuant to NYEL.

TWENTIETH: At all times relevant to this action, Daniel had the authority to assist in the hiring, firing, and disciplining of employees at defendant.

TWENTY-FIRST: Daniel had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her willful discriminatory and animus retaliatory treatment against plaintiff.

TWENTY-SECOND: Daniel aided, abetted, incited, controlled, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL.

TWENTY-THIRD: Daniel actually participated in the conduct giving rise to plaintiff's discrimination and retaliation claims and is thereby individually liable for her willful, wanton and malicious discriminatory and retaliatory treatment against plaintiff pursuant to NYEL.

TWENTY-FOURTH: At all times relevant to this action, Morris had the authority to assist in the hiring, firing, and disciplining of employees at defendant.

TWENTY-FIFTH: Morris the power to do more than carry out personnel decisions made by others and is thereby individually liable for her willful discriminatory and animus retaliatory treatment against plaintiff.

TWENTY-SIXTH: Morris aided, abetted, incited, controlled, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL.

TWENTY-SEVENTH:     Morris actually participated in the conduct giving rise to plaintiff's discrimination and retaliation claims and is thereby individually liable for her willful, wanton and malicious discriminatory and retaliatory treatment against plaintiff pursuant to NYEL.

TWENTY-EIGHTH:  As pled, plaintiff engaged in the protected activity of complaining of defendants' discrimination against her based on her religion when she formally complained of defendants' willful activity to her supervisors and defendant's management, who did not lack sufficient authority or control over plaintiff, which imposed liability on all defendants.

TWENTY-NINTH:    Defendants were aware of plaintiff's engagement in protected activity.

THIRTIETH:  Plaintiff suffered adverse employment actions due to her engagement in said protected activity.

THIRTY-FIRST:     There was clearly but for causal connection between plaintiff's protected activity and the adverse employments actions she was subjected to by defendants.

**FACTS**

THIRTY-SECOND:   On March 11, 2022, due to her skills and qualifications, defendant offered plaintiff the position of Staff Nurse.

THIRTY-THIRD:     On April 25, 2022, plaintiff began her employment with defendant in the role of Emergency Department Registered Nurse (RN).

THIRTY-FOURTH:   In August 2022, plaintiff successfully completed her orientation at defendants and a one-year Nurse Fellowship Program designated for new graduate RNs.

THIRTY-FIFTH:     As a result of her performance, defendants promoted plaintiff to the position of Senior Staff Nurse.

THIRTY-SIXTH:     As part of plaintiff's position responsibilities, she served as a preceptor and has trained multiple new graduate nurses as well as newly hired nurses in defendants' Emergency Department.

THIRTY-SEVENTH: Plaintiff is also served as an active member of defendants' Emergency Department Nursing Council and was recently elected as Chairman of the Emergency Department Nursing Council, and has consistently delivered high-quality care to defendants' patients, earning the highest praise from all of defendants' managers for her performance.

THIRTY-EIGHTH:     In September 2023, plaintiff received her annual performance evaluation and was assigned a rating of "3" out of "5," signifying a "successful" performance under defendants' review system.

THIRTY-NINTH:     The evaluation was based on plaintiff's successful performance for the year preceding September 2023.

FORTIETH:     Based on this evaluation, plaintiff was awarded a performance-based bonus in the amount of $6,610 and a merit salary increase, raising her annual compensation from $112,000.00 dollars to $118,720.00 dollars in recognition of her contributions and professional excellence.

FORTY-FIRST:     On October 7, 2023, Hamas, a U.S.-designated foreign terrorist organization, launched a brutal attack on Israel, resulting in the murder of more than 1,200 Israelis and foreign nationals, including at least 46 U.S. citizens. This was the deadliest massacre of Jews since the Holocaust. In addition to the killings, Hamas and affiliated groups kidnapped approximately 251 individuals, taking them as hostages into Gaza.[1]

FORTY-SECOND:     Since the October 7, 2023, attacks, there has been a documented and troubling rise in antisemitic incidents across the United States. According to preliminary data

---

[1] https://www.congress.gov/crs-product/R47828

released by the Anti-Defamation League (ADL), there have been over 10,000 reported antisemitic incidents in the United States in the year following the October 7, 2023, terrorist attack by Hamas in Israel. This marks the highest number of antisemitic incidents recorded in any one-year period since ADL began tracking such data in 1979.[2]

FORTY-THIRD:    The attack triggered deep emotions for plaintiff, evoking painful historical memories of millennia of antisemitism and violence targeting the Jewish people. Plaintiff's expression of grief, concern, and solidarity with victims of the attack was a legitimate and protected expression of her Jewish identity.

FORTY-FOURTH:    Support for Israel and Zionism constitutes an integral component of the religious and cultural identity of plaintiff.

FORTY-FIFTH:    For plaintiff, the belief in Israel as her ancestral homeland is deeply rooted in both religious tradition and national origin.

FORTY-SIXTH:    This connection is fundamental to the expression and practice of plaintiff's Jewish identity.

FORTY-SEVENTH:  The Justice Department issued the following statement from Attorney General Merrick B. Garland marking one year since Hamas's October 7, 2023, terrorist attacks in Israel in part:

> "Monday, October 7 will mark one year since Hamas terrorists murdered nearly 1,200 people, including more than 40 Americans, kidnapped hundreds of civilians, and perpetrated the deadliest massacre of Jews since the Holocaust. As made clear by the charges we recently unsealed against Yahya Sinwar and other senior leaders of Hamas, the Justice Department is committed to pursuing the terrorists responsible for murdering Americans — and those who illegally provide them with material support — for the rest of their lives. We are targeting every aspect of Hamas's operations, and our work is far from over.

---

[2] https://www.adl.org/resources/press-release/over-10000-antisemitic-incidents-recorded-us-oct-7-2023-according-adl

We are also committed to continuing to combat the disturbing rise in the volume and frequency of threats against Jewish, Muslim, Arab, and Palestinian communities here in the United States that we saw in the wake of last year's attacks. The Justice Department has responded forcefully to these threats, and we have no tolerance for unlawful acts fueled by hatred of any kind.

We also recognize that as we mark one year since the attacks, we do so at a time when millions of Jewish Americans are observing the High Holidays. Today, and every day, the Justice Department reaffirms its commitment to ensuring that Jews in this country feel safe and are protected. No person and no community should have to live in fear of hate-fueled violence, and the Justice Department will aggressively investigate and prosecute criminal acts and threats of hate whenever and wherever they occur."[3]

FORTY-EIGHTH:    Following the attack, defendant released an email to all employees condemning the attacks against Israel and stating in part:

"As an organization dedicated to safeguarding people's health and well-being, we are horrified by the deadly terrorist attacks against Israel. The killings and hostage-taking by the militant group Hamas are barbaric and inexcusable. People have the right to safety regardless of where they live or worship. That solemn right has been brutally violated, with many innocent lives lost. As a community we strongly condemn these outrageous hate-filled terrorist acts."

FORTY-NINTH:     On or about October 12, 2023, in response to the October 7, 2023, terrorist attacks committed by Hamas against Israel, plaintiff exercised her protected rights by engaging in constitutionally and statutorily protected religious expression.

FIFTIETH:    Plaintiff posted on her private and personal Instagram account an image that included the words, "You either stand with Israel or you stand with terrorism." The image featured two symbols: the Star of David and the emblem of Hamas.

FIFTY-FIRST:    On the same date, plaintiff further engaged in protected expression stemming from her religious identity by posting a photograph of an Israeli soldier kidnapped and held

---

[3] https://www.justice.gov/archives/opa/pr/attorney-general-merrick-b-garland-statement-marking-one-year-hamass-october-7-terrorist

hostage by Hamas. That soldier was a former high school classmate of plaintiff, and the post was a direct expression of plaintiff's emotional and religious response to the terrorist violence.

FIFTY-SECOND: At all relevant times, plaintiff's Instagram account was private and personal. Nothing on plaintiff's account identified or implied any association with defendants, nor did it contain any reference to her place of employment, and therefore did not violate any of defendants' policies.

FIFTY-THIRD: On or about November 15, 2023, plaintiff received a text message from Morris stating: "Hey Leviah, it's Vanita. HR just contacted me asking for you to respond to an email by Forte.

FIFTY-FOURTH: Plaintiff subsequently located an email from Forte requesting a meeting "to discuss a complaint that was filed with HR."

FIFTY-FIFTH: Plaintiff promptly responded that she was available at 4:00 p.m. that same day. At 4:42 p.m., Forte confirmed and initiated the meeting via Webex.

FIFTY-SIXTH: During the meeting, Forte began engaging in religiously discriminatory conduct. Forte first asked plaintiff to confirm that "Leviahmelanie" was her personal, private Instagram username, which she acknowledged it was.

FIFTY-SEVENTH: Without any legitimate business reason, Forte then presented plaintiff with a screenshot of a post from her private, non-work-related Instagram account and asked if she had made the post. Plaintiff confirmed she had.

FIFTY-EIGHTH: Forte stated there had been an "anonymous complaint" submitted to HR regarding the post.

FIFTY-NINTH:        Despite the fact that plaintiff's account was private, unaffiliated with defendants, and made in plaintiff's personal capacity, Forte asked plaintiff if she wished to provide context.

SIXTIETH:        This line of interrogation, focused solely on plaintiff's religious expression in support of Israel and the Jewish people, constituted unlawful religious discrimination under Title VII, NYEL §§ 290 *et seq*., and NYLL § 201-d.

SIXTY-FIRST:        Plaintiff, via her visible emotional distress, explained through tears that her intention was not to offend anyone but to express solidarity of her Jewish faith and people following the terrorist attacks of October 7, 2023.

SIXTY-SECOND:        Plaintiff, feeling her position was in jeopardy because she was Jewish, apologized and reiterated that the post was made in a personal capacity.

SIXTY-THIRD:        Rather than close the matter, Forte informed plaintiff that he would report their discussion to defendant's Board and that they would determine whether "disciplinary action" would follow, further amplifying the discriminatory scrutiny directed at plaintiff for her protected religious beliefs and expression.

SIXTY-FOURTH:        At no time did plaintiff's Instagram account identify or reference any defendant in any way.

SIXTY-FIFTH:        Plaintiff's expression was personal, religious, and protected by Title VII, NYEL § 290 *et seq.*, and NYLL § 201-d.

SIXTY-SIXTH:        The targeting of plaintiff due to her religious expression created a hostile and intimidating work environment and caused her significant emotional distress as she felt she could no longer openly express her Jewish identity.

SIXTY-SEVENTH:    Forte stated that her post with the Star of David and the Hamas emblem was wrought with bias and hatred, violated the Hospital's policies and called into question plaintiff's ability to provide compassionate and equitable care to patients regardless of nationality, ethnicity, or religious beliefs.

SIXTY-EIGHTH:    Hamas is a terrorist organization, as designated by the United States government and as identified by defendant.

SIXTY-NINTH:    Plaintiff's statement accurately identified the perpetrators of the October 7, 2023, attack against Israel as terrorists, and stated that support for their acts supported terrorism, which was neither offensive nor inappropriate or against any of defendant's policies.

SEVENTIETH:    In part, defendant's Social Media Policy stated:

> While members of the NYU Langone community are permitted to engage in protected concerted activity and certain whistleblower activity as prescribed under the law, they may not post or share statements about the NYU Langone community or outside parties that are:
>
> Offensive, obscene, defamatory, threatening, intimidating, harassing, shaming, bullying, retaliatory, discriminatory, hateful, racist, sexist, or result in public humiliation

SEVENTY-FIRST:    Plaintiff's protected religious statement expressed a viewpoint condemning a terrorist massacre, which was the same stance defendant took in their email to all employees condemning the attack.

SEVENTY-SECOND:    Plaintiff's practice of her religious belief in support of Israel is a protected activity.

SEVENTY-THIRD:    It is in fact, defendants who have breached their own policies by harassing and discriminating against plaintiff for her engagement protected activity of religious expression.

SEVENTY-FOURTH:     Plaintiff's religious expression did not reference or target any individual, religion, or ethnic group, but rather identified a state of mind associated with terrorism.

SEVENTY-FIFTH:    Defendants' adverse actions following her outward expression of Jewish solidarity and faith are openly and overtly discriminatory based on plaintiff's Jewish religion.

SEVENTY-SIXTH:    On or about December 11, 2023, defendants engaged in further unlawful religious discrimination when Morris summoned plaintiff to a meeting under the pretext of performance concerns and issuing her a written warning.

SEVENTY-SEVENTH:     The warning falsely accused plaintiff of posting "intimidating and hateful material" online, referring to a private, non-work-related Instagram post in which plaintiff expressed support for Israel and the Jewish people in response to terrorist violence.

SEVENTY-EIGHTH: Morris not only demanded that plaintiff sign the warning but further compelled her to issue a written apology on her personal Instagram account.

SEVENTY-NINTH:    Plaintiff was told to use defendants' prescribed language, including statements such as "in support of innocent people from both Israel and Palestine" and that she must "empathize with all the innocent people who are victim to this tragedy and hope for a solution that brings peace for everyone."

EIGHTIETH:  The issuance of the written warning and the compelled apology demanded by Morris in response to plaintiff's religious expression constituted unlawful harassment and discrimination on the basis of plaintiff's Jewish faith and religious beliefs.

EIGHTY-FIRST:     Plaintiff reasonably believed that noncompliance would result in immediate termination, thereby subjecting her to coercive and retaliatory treatment in violation of her legal rights.

EIGHTY-SECOND:   Defendants' discrimination against plaintiff was taken despite the absence of any harm or disruption to defendants.

EIGHTY-THIRD:     Plaintiff's original social media post condemned the Hamas terrorist organization. It did not express opposition to supporting innocent civilians of any background.

EIGHTY-FOURTH:   Plaintiff's post was done on personal time and unrelated to defendant and was protected religious activity under Title VII and NYEL §§ 290 *et seq*., and protected recreational activity under NYLL § 201-d.

EIGHTY-FIFTH:     Defendants adopted a discriminatory interpretation, telling plaintiff her religious expression was hateful and biased.

EIGHTY-SIXTH:     Defendants' religious discrimination against plaintiff was not based on the actual substance of the  post but stemmed from defendants' own discriminatory assumptions and motives, revealing an unlawful bias against plaintiff's protected religious expression.

EIGHTY-SEVENTH: Defendants went so far as to characterize plaintiff's use of the term terrorism as inherently hateful and biased, claiming it violated their Social Media and Anti-Harassment Policies on the basis that the term has been used pejoratively toward the Muslim community.

EIGHTY-EIGHTH:   This position is both inconsistent and discriminatory. Notably, defendants, themselves, publicly condemned the October 7, 2023, attacks as "outrageous, hate-filled terrorist acts," without suggesting that their own use of the word "terrorist" was hateful or biased.

EIGHTY-NINTH:     Defendants' selective enforcement and double standard further demonstrate the pretextual nature of their actions and the underlying discriminatory animus against plaintiff for her Jewish religion and her expression of support for Israel.

NINETIETH: Defendants' compulsion of plaintiff to recant her religiously grounded expression amounted to coerced speech and unlawful retaliation.

NINETY-FIRST: Further evidencing retaliation, defendants took the adverse action of altering plaintiff's performance evaluation, causing her to lose salary.

NINETY-SECOND: For the first time in her career with defendants, plaintiff's September 2023, rating was retroactively and purposefully lowered by from "3" to a "2," due to the disciplinary action tied to her protected Instagram activity, an action that clearly stemmed from plaintiff's identity as a Jewish individual.

NINETY-THIRD: Defendants' retroactive written warning also included a discriminatory and retaliatory threat that "any future incidents of this nature" would result in further disciplinary action, up to and including termination, and as will be demonstrated herein, caused her to be subjected to the adverse action of loss of pay.

NINETY-FOURTH: This vague reference to plaintiff's engagement in speaking of her Jewish faith constituted further evidence of religious discrimination and animus.

NINETY-FIFTH: In truth, there was no "incident," only protected expression based on deeply held religious and cultural beliefs. Defendants' actions were motivated by plaintiff's Jewish identity and her expression of solidarity with the Jewish people, and reflect unlawful religious discrimination and retaliation in violation of Title VII and other applicable laws.

NINETY-SIXTH: Fearing escalating retaliation and that her employment was at risk solely because she is Jewish and posted in support of Israel, plaintiff signed Morris's adverse written warning issued by defendants.

NINETY-SEVENTH: She did so under duress, fully aware that refusal would likely result in termination.

NINETY-EIGHTH:    Immediately after being compelled to sign the warning, plaintiff experienced a severe panic attack in the workplace restroom and became emotionally overwhelmed.

NINETY-NINTH:    Plaintiff informed the charge nurse on duty that she needed to leave, responsibly handed off her patient caseload to another nurse, and left the premises.

ONE HUNDREDTH: While en route home, plaintiff called her therapist and scheduled an emergency session due to the acute distress caused by defendants' discriminatory conduct.

ONE HUNDRED FIRST:    Due to defendants' religious discrimination against her, on or about January 10, 2024, Forte told plaintiff that due to her disciplinary record, but for her engagement in protected activity, she was no longer eligible for the September 2023, merit increase and bonus and that she was required to repay the compensation previously awarded.

ONE HUNDRED SECOND: On January 10, 2024, Bender issued a letter to plaintiff, which stated in part, "It has come to my attention that you received an evaluation score of 3 on your 2023 evaluation, even though you received a disciplinary action that should have precluded you from receiving a score of "3" or above."

ONE HUNDRED THIRD:    Bender's statement was absolutely incorrect. Plaintiff received a discriminatory evaluation of 3, as earned in September 2023. There was no disciplinary letter on file. The disciplinary letter referenced by Bender was received by plaintiff in December 2023,  and was the result of defendants' discrimination and retaliation against plaintiff for her religious beliefs. The pretextual disciplinary letter was received by plaintiff after plaintiff's earned merit raise and bonus was granted.

ONE HUNDRED FOURTH:  Bender's discriminatory letter further stated, "Any employee who received a "2" or below was not eligible for a 2023 merit increase or bonus."  Bender continued to falsely assert that plaintiff's September 2023, performance evaluation was below a "3" to justify

defendants' unlawful demotion of plaintiff and the recoupment of her already-earned merit-based salary increase and performance bonus. This fabricated downgrade served as a pretext for discriminatory and retaliatory action.

ONE HUNDRED FIFTH:     Due to plaintiff's religious beliefs, defendants asserted that plaintiff was no longer in "good standing" and, as a result, was ineligible to retain her previously awarded performance-based bonus and salary increase, both of which had been earned based on her exceptional work during the prior evaluation period. This action constituted a clear and overt instance of unlawful discrimination and retaliation but for her engagement in protected activity pursuant to Title VII, NYEL §§ 290 *et seq*., and NYLL § 201-d.

ONE HUNDRED SIXTH:     Plaintiff's base salary, which had been increased to $118,720.00 dollars, as a result of defendants' retaliatory retroactive reduced performance rating reduced to $112,000.00 dollars after her engagement in protected activity.

ONE HUNDRED SEVENTH:     Defendants' adverse action after plaintiff's engagement in protected activity of revoking her earned compensation and demanding repayment of on or about $11,176.00 dollars, was but for plaintiff's engagement in protected activity and because of her Jewish religion in violation of Title VII, NYEL §§ 290 *et seq*, and NYLL § 201-d.

ONE HUNDRED EIGHTH:  Plaintiff continues to suffer ongoing harm as a direct result of defendants' discriminatory and retaliatory conduct. As a consequence of defendants' adverse actions, plaintiff's current salary remains unjustly reduced. Plaintiff presently earns $121,810.00 dollars, whereas, absent the retaliatory measures taken against her, her salary should rightfully be $128,530.00 dollars, demonstrating defendants' continued adverse action against plaintiff and material loss.

ONE HUNDRED NINTH:    Plaintiff did not engage in hateful or biased behavior, but was in fact, the subject of discriminatory treatment and animus based on her religion. Despite providing excellent medical care and receiving consistently positive performance evaluations, defendants targeted plaintiff for a private social media post made in the wake of a traumatic event.

ONE HUNDRED TENTH:    The antisemitic treatment endured by plaintiff by defendants due to her Jewish religion is not an isolated incident, but rather reflects a broader trend that has intensified since the October 7, 2023, Hamas terrorist attacks.

ONE HUNDRED ELEVENTH:      According to preliminary data from the Anti-Defamation League, more than 8,015 incidents of antisemitic harassment between October 2023 and September 2024, were verbal or written.[4]

ONE HUNDRED TWELFTH:       As illustrated by defendants' adverse actions in this case, antisemitism can manifest in covert forms, cloaked as "policy enforcement" or neutral regulation, when in reality such measures are selectively applied to suppress expressions of Jewish identity and support for the Jewish community. This discriminatory use of institutional authority serves only to perpetuate bias under the guise of professionalism or neutrality.

ONE HUNDRED THIRTEENTH:    The severity and pervasiveness of defendants' antisemitism through its, forced apology, public reprimand, threat of termination, emotional trauma, and financial penalties created a hostile work environment for plaintiff that she continues to suffer within to date for her outward expression of her Jewish faith.

ONE HUNDRED FOURTEENTH:   In response, to defendants' discrimination and adverse actions against her, on or about January 11, 2024, plaintiff submitted a formal written complaint to Bender stating:

---

[4] https://www.adl.org/resources/press-release/over-10000-antisemitic-incidents-recorded-us-oct-7-2023-according-adl

"This is my formal complaint that I have been discriminated against based on my religion and have suffered adverse action in retaliation for my religious beliefs. I am requesting an immediate investigation and that the directive for me to give back my $6,610 bonus be expunged, and that my merit increase and bonus be reinstated immediately."

ONE HUNDRED FIFTEENTH: On January 12, 2024, Bender replied that a member of the labor relations team would follow up.

ONE HUNDRED SIXTEENTH: Further demonstrating defendants' but for adverse actions against her, six (6) days later, on January 16, 2024, plaintiff received a "Notice of Intent to Recover Payroll Overpayment" from defendants' Payroll Department, instructing her to return the previously awarded merit pay within two (2) days.

ONE HUNDRED SEVENTEENTH: Plaintiff promptly contested the directive retaliatory directive.

ONE HUNDRED EIGHTEENTH: In response to plaintiff's further engagement in protected activity, Bender stated only that "there was not enough information given in this case" and advised plaintiff to contact Human Resources.

ONE HUNDRED NINETEENTH: On January 19, and 22, 2024, plaintiff received a voicemail message from Daniel instructing plaintiff to return Daniel's calls regarding plaintiff's formal complaint of discrimination based on her Jewish religion.

ONE HUNDRED TWENTIETH: Plaintiff returned Daniel's voicemail messages on January 24, 2024, and spoke with Daniel on January 25, 2024.

ONE HUNDRED TWENTY-FIRST: Daniel stated to plaintiff, unequivocally, that there was "no appeal process" available to reverse the disciplinary action, and that the action against her was final.

ONE HUNDRED TWENTY-SECOND:     Daniel did not address plaintiff's formal complaint of religious discrimination or her request for an investigation, nor did she acknowledge defendants' religious animus that had caused the retaliatory financial penalties against plaintiff.

ONE HUNDRED TWENTY-THIRD:     Plaintiff reiterated that she never should have received a disciplinary warning and that she was being targeted because of her Jewish religion.

ONE HUNDRED TWENTY-FOURTH:     Daniel repeated that "nothing could be done."

ONE HUNDRED TWENTY-FIFTH:     Defendants' adverse actions against plaintiff were designed to intimidate plaintiff into concealing her faith and beliefs and threatened further disciplinary action should she continue to express her religious convictions, which plaintiff had done in a private, personal forum, constituted a direct violation of her rights under Title VII, NYEL §§ 290 *et seq*, and NYLL § 201-d.

ONE HUNDRED TWENTY-SIXTH:     Defendants' selective and misapplied enforcement of their social media and conduct policies has been applied inconsistently, with discriminatory and retaliatory effect, as illustrated by the recent divergent treatment of two physicians employed by defendants.

ONE HUNDRED TWENTY-SEVENTH:     In or around late 2023, defendants and its affiliated medical institutions removed both Dr. Benjamin Neel (Dr. Neel), a senior cancer researcher, and Dr. Zaki Masoud (Dr. Masoud), a junior physician, from their positions following public controversy over their respective social media posts concerning the October 7, 2023, terrorist attack on Israel by Hamas.

ONE HUNDRED TWENTY-EIGHTH:     Dr. Neel, a Jewish physician, posted content critical of Hamas and supportive of Israel in the days following the brutal attack.

ONE HUNDRED TWENTY-NINTH:	Despite his tenured status and years of high-level service, defendants terminated Dr. Neel from his directorship position and subjected him to internal retaliation, including the withholding of critical research funding and the initiation of an academic misconduct investigation.

ONE HUNDRED THIRTIETH:	Dr. Neel has asserted in legal filings that his support for Israel is a direct expression of his Jewish identity and religious belief and that defendants' actions constituted unlawful retaliation and discrimination based on his religion and viewpoint.

ONE HUNDRED THIRTY-FIRST:  In contrast, Dr. Masoud, who was accused of publishing a post that described the October 7, 2023, Hamas massacre as "liberation" and "decolonization," was quietly reinstated to his prior role following public pressure and a petition campaign that garnered nearly 100,000 signatures.

ONE HUNDRED THIRTY-SECOND:	Despite similarly engaging in online commentary regarding the Israel-Hamas conflict, Dr. Masoud did not face the same degree of adverse action, scrutiny, or retaliation as plaintiff or Dr. Neel due to their Jewish religion.

ONE HUNDRED THIRTY-THIRD: Defendants' disparate treatment of these two (2) individuals, each of whom expressed opposing viewpoints on the same issue, demonstrates that defendants do not enforce their policies in a neutral or content-blind manner, and discriminated against plaintiff and Dr. Neel because they are Jewish.

ONE HUNDRED THIRTY-FOURTH:	Instead, defendants selectively punished Jewish employees who expressed religiously motivated support for Israel, while allowing another non-Jewish employee who expressed opposing, more inflammatory views to return to his position

ONE HUNDRED THIRTY-FIFTH: This inconsistent application of policy further underscores defendants' discriminatory animus toward plaintiff and others who share her Jewish faith or Jewish religious expression in support of Israel.

ONE HUNDRED THIRTY-SIXTH: Such discriminatory and retaliatory conduct violates Title VII, NYEL §§ 290 *et seq*, and NYLL § 201-d protecting employees from religious discrimination, viewpoint-based retaliation, and the suppression of lawful expression outside of the workplace.

ONE HUNDRED THIRTY-SEVENTH: On May 23, 2024, plaintiff timely submitted a formal Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

ONE HUNDRED THIRTY-EIGHTH: On May 28, 2025, the EEOC issued plaintiff a notice of her right to sue.

ONE HUNDRED THIRTY-NINTH: Plaintiff's use of her private Instagram was protected recreational and religious activity. The content was private, religious, and unrelated to defendants.

ONE HUNDRED FORTIETH: Defendants have falsely characterized plaintiff's post to justify its religious discrimination and adverse actions against her.

ONE HUNDRED FORTY-FIRST: As a result of the discriminatory treatment she endured, plaintiff suffered the adverse actions of loss of pay, as well as emotional and physical consequences.

ONE HUNDRED FORTY-SECOND: Plaintiff's anxiety has intensified, her sleep has deteriorated, and she has increased therapy sessions to address the trauma of being punished for her Jewish identity.

ONE HUNDRED FORTY-THIRD:  Plaintiff now lives in fear of further retaliation and censors herself and her religion on her own private social media platforms, despite their lack of affiliation with defendants.

**WHEREFORE,** Plaintiff demands judgment against the Defendants as follows,

1. For a money judgment against the Hospital representing actual damages for its Religious Discrimination against plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

2. For a money judgment against the Hospital representing compensatory damages for its Religious Discrimination against plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

3. For a money judgment against the Hospital representing emotional damages for its Religious Discrimination against plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

4. For a money judgment against the Hospital representing punitive damages for its Religious Discrimination against plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

5. For a money judgment against the Hospital representing actual damages for its retaliation against plaintiff for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

6. For a money judgment against the Hospital representing compensatory damages for its retaliation against plaintiff for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

7. For a money judgment against the Hospital representing emotional damages for its

retaliation against plaintiff for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.;

8. For a money judgment against the Hospital representing punitive damages for its retaliation against plaintiff for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.;

9. For a money judgment against the hospitals representing actual damages for its creation of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.;

10. For a money judgment against the Hospital representing compensatory damages for its creation of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.;

11. For a money judgment against the Hospital representing emotional damages for its creation of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.;

12. For a money judgment against the Hospital representing punitive damages for its creation of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.;

13. For a money judgment representing actual damages against the Hospital for its Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

14. For a money judgment representing compensatory damages against the Hospital for its Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

15. For a money judgment representing emotional damages against the Hospital for its Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

16. For a money judgment representing actual damages against the Hospital for its retaliation against plaintiff in violation of NYEL § 290 *et seq.*;

17. For a money judgment representing compensatory damages against the Hospital for its retaliation against plaintiff in violation of NYEL § 290 *et seq.*;

18. For a money judgment representing emotional damages against the Hospital for its retaliation against plaintiff in violation of NYEL § 290 *et seq.*;

19. For a money judgment representing actual damages against the Hospital for its creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq.*;

20. For a money judgment representing compensatory damages against the Hospital for its creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq.*;

21. For a money judgment representing emotional damages against the Hospital for its creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq.*;

22. For a money judgment representing actual damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq.*;

23. For a money judgment representing compensatory damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq.*;

24. For a money judgment representing emotional damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq.*;

25. For a money judgment representing actual damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

26. For a money judgment representing compensatory damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

27. For a money judgment representing emotional damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

28. For a money judgment representing actual damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

29. For a money judgment representing compensatory damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

30. For a money judgment representing emotional damages against defendant Bender for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

31. For a money judgment representing actual damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

32. For a money judgment representing compensatory damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

33. For a money judgment representing emotional damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

34. For a money judgment representing actual damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

35. For a money judgment representing compensatory damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

36. For a money judgment representing emotional damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

37. For a money judgment representing actual damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

38. For a money judgment representing compensatory damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

39. For a money judgment representing emotional damages against defendant Forte for his participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

40. For a money judgment representing actual damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

41. For a money judgment representing compensatory damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

42. For a money judgment representing emotional damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

43. For a money judgment representing actual damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

44. For a money judgment representing compensatory damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

45. For a money judgment representing emotional damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

46. For a money judgment representing actual damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

47. For a money judgment representing compensatory damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

48. For a money judgment representing emotional damages against defendant Daniel for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

49. For a money judgment representing actual damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

50. For a money judgment representing compensatory damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

51. For a money judgment representing emotional damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the Religious Discrimination against plaintiff in violation of NYEL § 290 *et seq*.;

52. For a money judgment representing actual damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

53. For a money judgment representing compensatory damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

54. For a money judgment representing emotional damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the retaliation against plaintiff in violation of NYEL § 290 *et seq*.;

55. For a money judgment representing actual damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

56. For a money judgment representing compensatory damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

57. For a money judgment representing emotional damages against defendant Morris for her participation in, and aiding, abetting, inciting, compelling, and/or coercing of the creation of a Hostile Work Environment against plaintiff in violation of NYEL § 290 *et seq*.;

58. For equitable and injunctive relief;

59. For reasonable attorney's fees and costs; and

60. For all other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.

Dated: Islandia, New York
      August 19, 2025

SCOTT MICHAEL MISHKIN, P.C.

By:     _____

      Scott Michael Mishkin, Esq.
      One Suffolk Square, Suite 240
      Islandia, New York 11749
      Telephone: 631-234-1154
      Facsimile: 631-234-5048
      Attorneys for Plaintiff
